We'll hear argument next in Case 18-457, the North Carolina Dept. of Revenue v. the Kaestner Rice 1992 Family Trust. Mr. Sochek. Mr. Chief Justice, and may it please the Court. This case involves a statute that taxes trust income in proportion to the interests of in-state beneficiaries. Now, trust beneficiaries, it bears remembering, are the true owners of trust income under trust law. Because of all the benefits and protections that States extend to their residents, the States' pro rata tax on trust income comports with due process. But you couldn't tax the beneficiaries on that accumulated income when they haven't received it. Well, Your Honor, Stewart might be to the contrary. This Court's affirmance in Stewart is a situation where the opinion of the Pennsylvania Supreme Court that was affirmed doesn't recite any receipt of actual income, and yet the Court affirmed a tax on the beneficial interest. But North Carolina is not doing that. North Carolina is taxing the accumulating income. But you want to use the beneficiary's connection with North Carolina to impose a tax on the trust that doesn't have a connection. So, Your Honor, the point that connects them is that the beneficiary is part of the trust, indeed under trust law. She is the key part of the trust. It's very hard. And because of that, the whole of the trust. And so, Your Honor, the question is, does the beneficiary have a tax for her and her children? She is the named beneficiary. However, under section 1.2 of the trust instrument, the children may also receive distributions. So we've already said in prior cases, and you distinguish them as being in opposite today, that you can't tax the whole trust. You've got to only tax that which the beneficiary is an owner of. So how do we know she's going to receive anything anytime? She could leave it for her kids. She, in the event of this case, first of all. I mean, the trustee could decide to leave it for the kids. That's true. But several points. First of all, on the facts here, Ms. Kestner did in fact receive the trust income and the decanting occurred only after consultation. It was a loan, $250,000 after this tax period. Immediately after, there was a loan. But in addition. But it still begs the question, what makes it your right under any circumstance to tax all of the trust income where there is no guarantee that she is going to receive all of it at any point? Several points. One is during the entire period when the income is accumulating, the State is providing her with protection and benefits. The trustee doesn't have to pay for that. He's not required to. The trust doesn't require it. Sotomayor gives him discretion to pay for some of her expenses, but nothing in the trust says that she has to pay for the benefits that you are giving her as a State. But it is the very fact that those benefits and protections are being extended that enables the trustee to not give distribution. No, he has absolute discretion. Whether she had a need or not, he doesn't have to fulfill it. Under trust law, even what's called sole and absolute discretion is qualified by the need to look out for the needs of the beneficiaries. And that's actually an express term of the trust instrument here. Roberts. I probably should know this, but where is the trust located? How do you decide that? The trust has no. I mean, it's just a contract, right? So if you wanted, if the home of the trust wanted to tax the same income that you're trying to tax, where would that be? So the trust has no situs. Since Quill and other decisions, the focus really is on where are benefits and protections being extended. And also in Americold, this Court, Greeno as well, the Court noted that a trust is a mere abstraction. And that's why, that's really what brings us here. So you would say there's no State that could say we're the home State of the trust and we're the ones that have the primary claim on the taxation of this income? So under trust law, a trust has something called a principal place of administration. And one of the arguments my friend is making is that that and or where the trustee lives are the only contacts that count. But that, first of all, I would point out, page 51 of the red brief is where they make that argument. That would have the effect, adopting that rule, as my friend is asking, would have the effect of striking down the taxing criteria in 33 States. Breyer. We don't want to do that. Sorry, go ahead. No, no, go ahead. Look, the trustee lives in New York, okay? The settler is in New York. All the administration is in New York. There is one thing that's going to happen in North Carolina. The thing that's going to happen in North Carolina is if she is there, when it's distributed, she'll get some money, okay? Which you're totally free to tax. But that isn't what you want to tax. You want to tax all these things which are everyone except her is in New York. And moreover, we don't even know if she'll ever get the money. Now, there's something wrong with that. I don't know. It doesn't say specifically about trust in the Constitution. But thus, I mean, lots of trusts say there are ten beneficiaries, each one lives in a different State, and I, the trustee, have total discretion as to who give this money to, and maybe I'll give it to none of them. So here's a woman who might get none of it, and you want to tax that. Is that right? Do I have the facts right? I would point out some additional facts, Your Honor. First of all, Ms. Kestner did actually receive this money. Well, is that, is that, I'm talking about the law of North Carolina. And I'd only add to this that, by the way, if the trust has a million dollars extra income in year four, and if you say she's entitled to that, she isn't going to get it until year 14 at most, do you discount the increased value of the trust by the time she has to wait? Because she has nothing that increased in value more than the million discounted by the probability that she will ever get it. And when? Is that how the law works in North Carolina is what I'm asking. And, of course, I suspect the answer is no. But go ahead. First of all, this is a case in which 100 percent of the beneficiaries, the current beneficiaries, as the complaint itself says, are North Carolinians. So these questions of attenuated relationships aren't presented. I'm talking about only North Carolinians. And there are other people in the trust who live in California. And the North Carolinian may or may not get some money in year 14. That's the hypothesis. Okay. And I'm saying, under this law, do you tax that? What do you tax? The million dollars in extra value that came into the trust in year four? And what percent? And do you discount it? And how does it work, that law in North Carolina that you are defending? So the income is defined with reference to the Federal definition of income. The taxing statute in North Carolina essentially pulls in the Federal definition of distributable net income. And that is going to be done on essentially an accrual or a cash basis, depending on how it's presented. Okay. So it goes in, $1 million goes into the trust in year four. She will not see a penny of it at best until year 14. And not only that, she may never see a penny of it. So what you're saying is the trust, which is in New York, has to pay Carolina tax on $1 million because there is a beneficiary there who might never receive it. Or if they do receive it, will receive a far, you know, you could tax it. Now, that, am I got the facts right? So she's, the facts are perhaps at some variance with what we're discussing. First of all, she. That is what I said right. I want to think about this case. And I can't think about it unless I get the facts right. So do I have the facts right? I would lay out some additional facts that might be helpful. Isn't it a yes? She's currently eligible for this. Justice Breyer has the facts right. I believe you have them right, but perhaps not complete. Okay. That's what I'm going to say. Good. I got them right so far. And now let's add to make even more facts. She's currently eligible for distributions, first of all, during the years in question. Secondly, the trustee has a fiduciary duty to meet her needs, page 51 of the joint appendix. And as the Andrew C. case from New York that we cite points out, in a situation where the needs are not being met, a breach of fiduciary duty is occurring. But most fundamental, I think, to her. Where does that go? So what are her, what proportion of this constitute her needs? North Carolina, the statute is a pro rata statute according to the interests of the beneficiaries. So if there are two beneficiaries, for example, one in-state and one out-of-state, North Carolina will, first of all, follow any allocation that's made in the trust instrument. But failing that will go strictly pro rata. Can you, could you tax the children? They are eligible to receive distributions. So tax based on the children, Your Honor, or tax them. Excuse me. Tax them. They might get the money. So Stewart upholds a property tax levy directly to the beneficiaries. And what all of this is really reinforcing is that under trust law, the true owners of even accumulating income. But other states don't do it this way, right? Tennessee, but they're ending the income tax, maybe Georgia, where the tax is based on a contingent beneficiary in your state, which is all we have here, right? The only other states that do it that way are Tennessee and maybe Georgia. Is that correct? Not quite, Your Honor, in this respect. Fifteen states total. Based on a contingent beneficiary in the state where you tax the trust or the trustee in another state. No, Your Honor. Let me point out that, first of all, 15 states use beneficiary residency as at least a criterion. Second is. How about how many states use where the trust is administered to tax the accumulated but undistributed income? Fewer states use the place of administration as a criterion than use the criteria that are being challenged here. But does North Carolina tax a trust that's administered in North Carolina on the accumulated but undistributed income? Only in relation to the shares of any in-state beneficiaries. And, Justice Kavanaugh, if I may, I want to follow up on one point. It is a misconception by my friends to say that the Kessners are contingent beneficiaries. The State Supreme Court, for example, called Mrs. Kessner the primary beneficiary. Kagan. So how can the trustee change the beneficiary status? What does the trustee have to do if the trustee wants to say, you're no longer a beneficiary? When can the trustee say that? Under this trust. I'm not sure that the trustee can do that. Well, I thought, I mean, maybe I should know this, but when people say contingent beneficiary, I'm assuming that that means that she might never get the money because the trustee might read her out of the trust. Your Honor, no. I think the term contingent beneficiary is more often used to describe a situation where someone needs to die or some other life event needs to occur before the person becomes eligible. So what do you understand the contingency to be with respect to this particular trust? What is the contingency? There is none. And that is very much our point, is that the Kessners, Your Honor, that the Kessners were currently eligible for distributions. What, if anything, can happen to make the Kessner not get that distribution? Or do you think the Kessners are just going to get that distribution? So the Kessners could have died during the years in question, but living long enough to receive distributions is not seen as a contingency? The trustee cannot change the beneficiaries. Correct, Your Honor. Can the settler change the beneficiaries? No, my understanding is not. The beneficiaries are the beneficiaries, in your view. Right. And there are in the case. So unless they die, they are going to get this money. They are going to get this money eventually unless they die. That's right. In what shares? Is there a definite share that they now get, no matter what, in the future? Or can the trustee change the shares? Or can anyone change the shares? There is not a recital in the trust agreement of any shares. No. Look, there are five people. Two of them live in North Carolina. The trust earns a million dollars in a particular year. Are the two in North Carolina each entitled to $200,000 eventually? Or is it possible they will get less? Or is it possible they will get more? It is possible that they will get less or more. There is not a pro rata. Then how do you know how much of the share of the trust's income in that year, the million dollars, North Carolina should tax? Pro rata. What do you mean pro rata? If there are five beneficiaries, for example, and two of them are North Carolinians, assuming that the trust instrument doesn't include any division there, 40 percent would be the share. Ah, so then if, in fact, there are 100 beneficiaries and there is a person who lives in North Carolina who eventually will get one millionth of 1 percent, North Carolina is entitled to tax 1 percent. That's your view. Is that right? That, Your Honor, I'm not sure where you're getting the one. It's simpler. There are five beneficiaries. One lives in North Carolina. As it turns out, that one in North Carolina gets $3. The others get $999,997. But North Carolina does not tax $3. What it taxes is 20 percent or $200,000. Do I have my facts right? You do have those facts right. And what makes that fair, remembering that the standard here is fundamental fairness under the due process part of Quill, is that during that period, those beneficiaries were eligible for distributions, and all the while – But you're changing the trust instrument. Because you as a state are saying the trust must give them 20 percent each. Because regardless of what the terms of the trust are, I'm going to tax you on that 20 percent, even though you might get none, even though you might get more. You're still trust. You're being charged for 20 percent because you should have given her 20 percent. That's really what you're saying, isn't it? That – you're right, Your Honor, to say there is a – assuming nothing's in the trust instrument, there would be a – No, there is something in the trust instrument here. Trust instrument says that the trustee has absolute discretion to give her something or nothing. To give three people – I think there's two or three children. I don't know how many there are here, but let's assume there's four of them, her and three children, for using even numbers. The trustee could choose to – if she had a disabled child, to give it all to the disabled child, or to divide it among the three because she's very rich and they're not. Trustee has a lot of discretion, but you, the state, are changing the terms of the saying each of them must still pay 25 percent. That is correct, that nothing else appearing, we make the pro rata, and here's why that's fair. First of all, throughout the period in question, those people had true ownership of the accumulating assets. Secondly, also essentially on a pro rata basis, North Carolina is protecting each of them. You're not taxing any of those people. You're taxing the trust, right? We are taxing at the trust level. Of course, the trust income fundamentally under trust law belongs to them. What do you do about the problem? I understand Justice Breyer's question to be getting at, which is other jurisdictions. Is there an established way of allocating the tax burden? You know, if you have income from two States, they usually, you know, divvy it up according to some formula. In the situation where you get $3 goes to North Carolina and the other number goes somewhere else, and if those other jurisdictions want to tax the trust on those same funds, is there a mechanism for allocating that? There is, Your Honor. Under Section 105-160.4 in North Carolina, which is the credit statute, North Carolina accords a credit for taxes paid to other States. And I should have to. I'm sorry? Does it have to? There would come a point where the second element of Quill could become problematic in the absence of a credit. I'd like to point out what the propositions are on the other side. The Chief's question, I mean, yes, you take if it's other States. Now, it happens that each State, each State wants to tax the same way you do. And what happens? The pro rata would come directly. In a situation where, imagine all 50 States have the same scheme, obviously there would be beneficial. They don't all have the same scheme. One of them taxes on the basis of the money that the person who lives in their state actually gets. And it turns out that that person gets 80 percent of the income. But the North Carolina person gets 3 percent. What happens? In a situation where, are you assuming in your question, Your Honor, that actual distributions have occurred? Some States take on the basis of actual distributions. Other States have other ways of doing it. Some might tax the trust on the basis of the fact that all the administrators and the tax trustee and everybody else is in New York. Okay? There are many different ways. How do they figure it out? Do they all meet and figure it out? What happens? I'm just curious. They don't meet to figure it out. There are credit statutes in most of the States that accord a credit. I'd point out also where actual distributions occur, the trust level itself gets a deduction. This is through the incorporation of Section 662 of the Federal Code for the distributed amounts. I'd like to draw attention, if I might, to what the propositions are, first of all, that the State Supreme Court founded us on, and secondly, what my friend is arguing. Because part of the attraction of what North Carolina is doing here is verified by the problems with mandating under the Due Process Clause a different approach. First of all, the State Supreme Court's reasoning was, pages 13a and 18a of the Petition Appendix, beneficiary contacts categorically don't count. Beneficiaries are strangers to the trust income of which they are the true owners under trust law. Second, page 51 of the red brief, my friend's proposition is that only trustee contacts or trustee-related contacts in terms of the place of administration count, that is a recipe for tax avoidance. The fielding case that this Court has on a petition, 18664, is a graphic example. Faribault Foods was a major Minnesota company, was about to make a huge distribution of profits to the beneficiaries. On the eve of that distribution, the trustee was replaced with a Texas trustee, a State which has no State income tax, as I'm sure the Court knows. And the trust so far has successfully taken the position in fielding that trustee contacts are all that count. And counsel, along those lines, if I'm understanding your position correctly, because you think that rule is inequitable, you'd have us overrule Safe Deposit and Brook, two decisions of this Court that suggest that that's the correct rule. Is that right? Not overrule them, Your Honor. But what would you have us do with them if it's not overruling them? Two things, Your Honor. First of all, they can be distinguished in terms of being property tax cases versus income tax cases. Because this Court Let's say I don't find that distinction particularly significant. Slicing the bologna a little too thinly. Then what? Then we would be really within the proposition of the due process part of Quill, where these are decisions that have been superseded by the movement. Right. You're asking us to overrule them. I mean, it's a polite way of saying overrule, isn't it? They've probably, frankly, already been laid aside by other by the due process decisions. As this Court's noted is That's a really nice way of saying overrule. Right? They've probably already been overruled. I've already been overruled. We just haven't said so. That's probably right, Your Honor. Let me say why that's You'd have us overrule them in the name of fundamental fairness, I think. Is that right? In the name of fundamental fairness. And Justice Breyer's problems notwithstanding, that fundamental fairness problem we shouldn't take into account. No. There are criteria, a variety of criteria out there, and every one of them That's more fundamentally fair than the existing rule of this Court. It's almost 100 years old. So query whether that really is the existing rule, first of all. Those are Well, right. Except for the fact that we haven't overruled it, but we really have. Okay. But assuming we thought those were still precedents of the United States Supreme Court, let's just spot me that for the moment. You think it's more fair to overrule them and proceed down the track we've just illuminated with Justice Breyer than to maintain them? Yes, Your Honor, for several reasons. First of all, those are physical presence-based cases, which no longer is the focus of due process analysis. Secondly, the analysis in those cases is completely unfaithful to the proposition of trust law, that beneficiaries are the true owners of trust income. By the way, may I throw in a third case, Hansen? Yes, Your Honor. Hansen, you would be asking us to overrule, because I don't know how you can tax somebody you have no jurisdiction over, especially if they haven't done anything like pay any money over or have no contacts with the person in your State, all the meetings were in New York. So add a third case you want to overrule. Certainly there's no need to overrule Hansen here. Why? So how do you – the trustee is responsible for paying this tax. You're dragging the trustee into your court. The tax party is the trust, first of all, not the trustee. So how is the trust in your State? Pardon me, Your Honor? I thought the trust is represented by the trustee, and the trustee is not in your State. The trust has its presence. It's not being administered in your State. True. But its true owner, its central figure is in North Carolina. Let me offer. So why didn't we say that in Hansen? So Hansen, first of all, is a situation where the burden of adjudication, by the way, not taxing, fell on the person of the trustee. This Court in Walden describes – It's the same thing here. You're making the trustee liable for paying the tax. You're doing exactly what happened in Hansen. But it's not the trustee's money. The trustee is entirely – It wasn't in Hansen either. Hansen is not a tax case. Under this Court's decision in Stone, the ultimate incidence of the tax, where it will land, will be on the beneficiary. And that makes all the difference. Could North Carolina on that basis impose a property tax on the value of the trust assets because they belong to the beneficiaries? Yes, Your Honor. You could impose a tax on all the property in the trust? If there is, there would be – let me revise my answer to say the analysis of property taxes for the most part is more location-based than is the analysis of income taxes. But you said that the beneficiaries are the true owners. It's their property, so why not a property tax? So there would be an argument for that, certainly, but that's not this case. If I may, I'd like to reserve the balance of my time.  Thank you, Your Honor. Mr. O'Neill. Thank you, Mr. Chief Justice, and may it please the Court. I'd actually like to begin where Justice Ginsburg began because I think it highlights one of the key features and critical aspects of this case that the State's position ignores and that dictates the outcome. The first point is this was not really the beneficiary's money during the tax years. She didn't possess it or control it. She didn't access it. She couldn't use it. She couldn't buy anything with it, promise it to someone else. She couldn't have any say in how it was invested. She didn't receive any of it, and she had no guarantee that she would ever receive a penny of it in North Carolina or anywhere else. Was it the trustee's money? It was the trustee's money. He couldn't do any of those things. He is bound, of course, by a fiduciary duty, but within those broad limits, he does exercise the possession and control that, as this Court has recognized for decades He possesses it with a fiduciary duty to increase that money for her. He possesses it and controls it with a duty to act out of loyalty for a group of beneficiaries of which she is part. And if we look at the actual control that he exercised over the property and contrast it with the beneficiary, it demonstrates why the law treats him as the owner. He can buy a property with it. He can sell it. He can incur liability based on how he uses it. He can enter a contract. So that she eventually gets to enjoy it. One of the fundamental problems of this tax, as the Court noted in its previous questioning, is that it's premised on the prediction that she will receive this money. But in fact, at the time that this tax was imposed, that's unknown and unknowable. It's not known how many beneficiaries there are. It's not known who will actually receive the money. It's not known where they will live when they receive the money. How many people it's shared with. And the public trust. Alito, they know what she's getting or has gotten in a particular year. She knows where she lives in that year. The hypotheticals that, well, she might not get any, she might move somewhere else, those are hypotheticals. For these tax years, you know where she is and you know what she's gotten. She's gotten zero. And that's a critical point for this case. She received zero money during these tax years. And she had no guarantee that she would ever receive them. Now, if and when she actually does receive this property. Well, she's seeing a substantial asset of hers increase in value in the bank. And even if she can't touch it right now, she's getting richer and richer because of it. And that's influencing her life choices because she knows she's eventually going to enjoy that money. And if you compare her to, I mean, who are the three States that could tax this? One is the State where the trustee lives. One is the State where the trust administration is. And one is the State where the beneficiary is. The person who is getting the benefit of this increase in the asset is only the beneficiary. Justice Kagan, the premise of the question is that this is a source of wealth for her. That is not known at this point. She does not have a current interest in this trust asset. As the brief for the American College of Trust. Would your position be different if she were, if the trustee did not have this discretion as to shares? Suppose that the trust instrument simply said, here are the five beneficiaries. The trust will be distributed pro rata. You know, if one dies, then it will be distributed pro rata as to the other four. But the beneficiaries all know that they're going to get a fifth of this money. Would your answer be different? If the trust instrument gave her a vested current right to the income. Not a current right. She's going to have to wait until she's whatever years old, 30, 40, whatever. She can't pull the money now. But she's going to get the money one day. No, that case would not be different. Because it would still be based on this speculative possibility that she will ultimately receive the money. If it weren't speculative. That is, imagine it's not. All right? I wonder, and I'm asking this not as an argument or one way or the other. I just wonder how it works. The trust gets an extra million in year one. She will get a distribution of, say, a million in year 30. Now, just I think as Justice Kagan said, she is now worth more money than she was before. But she's not worth more money by a million. She is worth more money by a million discounted by her getting it 20 or 30 years in the future. That's why we have interest rates. That's why we have bank accounts, et cetera. So how does it actually work? She is only worth more money as measured by the accumulation of the trust if she is guaranteed to receive that income. Well, let's imagine she is. I still have you may not know, maybe nobody's ever looked into this question, but I'm imagining that she is going to get it eventually. Maybe this is an easier case because she isn't. But I imagine that she definitely is. Still, there is a problem. Of course, it will earn interest, but they'll tax the interest each year. So she's not worth now more. Try to sell it to somebody. A million dollars in the future is 20 years from now is worth a lot less than a million dollars. I think it's very difficult to deal with this. Tax law deals with it based on the principle of possession, control, and receipt. That is how income tax works. You are taxed when you receive the income. What is the theoretical justification? All of these measures are imperfect. And you can say with respect to any of these states, well, why did they get to tax undistributed income? But what you are saying is that as between two states, Connecticut and North Carolina, we should put the taxing authority for that undistributed income growth in Connecticut. And I have to say that just doesn't make a whole lot of sense to me. The trustee is not going to be the beneficiary of that income growth. Whatever income growth it is and however much it's discounted, the beneficiary who's getting richer is sitting in North Carolina. Again, the premise is that she's getting richer, which assumes that she will get She's definitely getting more richer than the trustee is. The trustee's bank account is not changing. The only thing we know at time X when this tax is imposed is that the trustee possesses and controls the property. As you pointed out, he has a duty of loyalty, so he can't spend it on himself and he can't give it to his friends. But within those limits, he is the owner of the property. We do not know that the beneficiary will ever actually receive that property. I thought we didn't need to answer the question raised by Justice Kagan's previous hypothetical and just raised by you, which is if we did know In other words, if it were guaranteed or certain, that might or might not be a different case. But this case is one where we don't know, based on the nature of the trust, contingent or discretionary beneficiary. And for that case, the answer I thought you were arguing should be that the state where the beneficiary resides cannot tax. But we could leave open the question raised by Justice Kagan's hypothetical. Is that not right? You could. The case here involves one in which — a trust agreement in which the trustee has absolute discretion to distribute this property as he sees fit and where he also has discretion to extend the trust into a new trust if he believes that the beneficiary would leave. But does that require her consent? Under New York law, it would not require her consent. In fact, he did consult with her because as part of his duties to ensure — to determine whether she was prepared to receive the money, he consulted with her. But under New York law, the decanting statute does not require the consent of the beneficiary. But if she decided at age 40 she wanted — she wanted all the property? If she decided that, then it would be in the trustee's discretion to decide whether — acting out of loyalty with her — for her and in good faith, whether her interests were better served by an extension of that trust and a decanting of that property into a new trust. What states do something like this? In other words, where it's discretionary or contingent beneficiary and impose the tax with a trust, trustee is in another state. So, Justice Kavanaugh, you are correct about that. There are currently three states that use the presence of a beneficiary — of a contingent beneficiary as the sole factor on which they will tax the accumulated income of a trust. As you pointed out, Tennessee has eliminated its income tax as of 2021. Georgia may or may not do it. Practitioners disagree about that. So that leaves North Carolina alone as the state that actually imposes a full tax on the accumulated income of a trust based on — based only on the fact of a contingent beneficiary. You're adding differently than I am. Tennessee has done away with income tax. Which was the other one? Georgia and North Carolina. I thought there were four states. Am I wrong? We believe there are three. We believe there are three. Do you think that New York can tax this income? For periods of time in which the trust was administered in New York, yes, New York could tax the income. So the state of administration can tax the income? Yes, Justice Kagan. And the state of the trustee can tax the income? That's correct. And the only state that can't tax the income is the state that is providing services to the person who's going to benefit from the income growth? The state where the beneficiary resides is really no differently situated from any other state. The fact that the beneficiary lives there is just — it's adventitious from the perspective of the trustee. The beneficiary can move from state to state to state during each of these years, and nothing about the trust administration would change. And meanwhile, I mean, well, if she moves from state to state to state, then each state for those particular years where she lives in the state can tax it. But eventually, she's going — and I know you say, well, maybe she won't. But you answered my hypothetical where you said even if there were no contingency, the state of residency couldn't tax. For these tax years, North Carolina is providing services to a person who — and the only person who is going to benefit from the income growth of this trust. First, I want — Again, nothing's perfect. But as between those — as among those three choices, I would think North Carolina has by far the greatest interest in taxation. First, I want to make sure I was clear that if there is no contingency, if the beneficiary has an absolute right to the income in a particular year, the state of residence absolutely can't tax it. I wasn't talking about contingency. And you keep changing it of like I have a right to the income. But I'm presuming that nobody can touch this corpus for a while, for five years, for 10 years. But eventually, you said, if somebody — you know, somebody was going to be able to access both the income and maybe the body of the trust, and still North Carolina couldn't tax it, notwithstanding that Connecticut and New York can tax it where, you know, there are tax officers who are pushing a lot of paper. But all the benefit of this trust is going to this person who lives down in North Carolina. I think you actually have to look at what benefits are being provided. So during the tax years, during the years in which she's living in North Carolina, she is paying income tax on all of the money she actually receives for the benefit of being a North Carolina citizen, just as every other citizen does. Now, she is not being taxed on income that she doesn't have, that she can't demand, that she has no right to. Yeah. Mr. O'Neill, if I can say — I mean, suppose she's making $100,000 a year. A person in North Carolina who's making $100,000 a year and a person in North Carolina who's making that exact same amount of income and has a $20 million trust are really in two different positions. That rationale, though, it's not limited to trust. Of course, you could have a child whose parent — who has a very wealthy parent in another state, and you could say, well, that child is differently situated from one that does not have family resources of that kind. But in the eyes of the law, they are not in any different situation. Neither one of them can demand that money. Neither one of them actually gets it. And it would not allow the state where the beneficiary lives to go and tax a parent who has a large amount of income because it would someday be destined for the kid or — And I thought this case was simpler than your argument seems to be making it. I thought this was a case about a state imposing a tax on someone for money that that person may never get. And if — and if the person ever gets some money, we have no idea how much that money would be. Isn't that what this case is about? So that's exactly right. I was — What is the uncertainty other than she has to stay alive? She has to stay alive. The assets could be dissipated because of poor investments. The trustee could decide that she's not ready to receive the money. The trustee could decide that the money should go to some other beneficiary. There are a number of ways in which — I thought she was the first-time beneficiary, the primary beneficiary. She is among a group of primary beneficiaries that at the point in time of the tax year has included her and her children. Of course, something could happen to her children, and the money would then need to be devoted to that purpose. But, Justice Ginsburg, even if it is very likely, even if we assume it's very likely that this money will go to her, it is not hers until it goes to her. And when it goes to her — and I think this is a critical part of the response to the State here — when it goes to her, the State is free to tax it, and it can tax it not only for — She might be in a different State when it goes to her. That's part of your point, too, isn't it? She may well live in a different State, and if she lives in a different State — In other words, when she gets the benefit of the money, if she ever gets the benefit — Right. If a beneficiary ever gets the benefit, they might not live in North Carolina. That's exactly right. And if she no longer lives in North Carolina, then North Carolina, with no legitimate basis whatsoever, will have taken property from the corpus of the trust. Do I understand you to say that the trust can be taxed in the years — by North Carolina in the years when it actually distributes money to the North Carolinian? That's correct. Well, but it won't happen that way because the North Carolina resident is going to be So the question is, can the beneficiary be taxed on the distribution the year it's actually made? Sure. The answer is yes. Right. Can the trust — no, at that point it won't be trust property. At that point it will be the beneficiary's property. And this — you know, the Federal Government has the same issue. U.S. citizens can have trusts that are located abroad, and what the Federal Government does is impose a throwback tax, so that when the beneficiary actually receives the money, the beneficiary can be taxed not only on that distribution, but also on income that had accumulated in previous years and the trustee did not pay taxes on. And throwback taxes are permissible, constitutional, and you're not challenging those in any way? We are not. We believe throwback taxes are permissible because they are taxing the beneficiary resident on money in their hands at that point. Are there other instances in tax law where a resident of State B, State A, is taxed by State A on the basis of an increase of value of property that is located in State B? In other words, I own some properties, a piece of land in New Hampshire, or let's say Maine, and I am a resident of Florida or North Carolina. Can North Carolina impose a tax upon me because the land that I now own in Maine is worth more this year than it was last year? The State where the owner lives in that hypothetical could tax on the income received from the property? No, I understand. I'm not asking that. Yeah. I'm asking whether, to repeat what I said, a North Carolina resident owns a piece of land in Maine. This year that piece of land is worth more than it was last year. Can North Carolina tax that increase in value? If the North Carolina resident has a current right? Well, of course she has a current right to go up to Maine and sit on her own land. Well, under this Court's decision, North Carolina can't tax property that's located in a different State. I take your question as being real property. Can't tax real property. Right. Suppose somebody owns a stock portfolio. Yes. Now, mostly, we wait until somebody sells the stock. That's correct. But we can. But we could. We could impose. Do it otherwise. A State could enact a wealth tax if the person that they are taxing has a current vested right to that, and it's something that they could sell. It's alienable. In that instance, the State could impose a tax for the wealth that is in the resident's hand. And that's the situation in the Commonwealth v. Stewart case that the State relies on, the 1940 Pennsylvania Supreme Court decision that the State relies on. That is a tax on the resident for property in the resident's hands, and that is a fundamentally different situation from the tax here, which is a tax on the trustee who is a nonresident for income that the beneficiary has not received. So the short answer — I thought in your brief you conceded that if this trust was a demand trust, the beneficiary could say, I want X, that that could be taxed by North Carolina. That's correct. Whether she actually receives — So the thing that Justice Kavanaugh and Justice Alito were reserving, and I assume Justice Kagan, was on the question of what happens if she is a guaranteed distributor, meaning she can't call it today, but at age 40 or at the end of the trust's life, at some point she's going to be the 100 percent donor or going to be a fixed 10 percent donor, whatever it might be. They're saying we should reserve on that question? I think that would be a different case. I think the trust instrument here is important to the facts of this case and to the outcome. Here the trustee has absolute discretion, and what that means is that she is not guaranteed ever to receive — So give me the argument the other way. Let's assume she was the 100 percent distributor at the end of the trust's life, which will be in 5 or 10 years, or she's 20 percent or she's 30 percent, whatever it is. Why do you think the State might have more purchase to tax them? If the beneficiary had a vested right in a certain percentage of the trust, then we would treat her as having a current interest in that trust. So I would say they still could not tax her for the income, but that's a situation which would implicate Justice Breyer's question, where if she has a current right to that, the State could, if it wanted, impose a wealth tax and tax her for that portion of it, because that would be money that is in her hands currently and that she could sell, she could promise to someone else. But this trust agreement is critically different in two respects. First, her receipt of anything is dependent on the trustee's decision to give it to her, period. Second, she has no right to promise, sell, or do anything with the possibility that she may someday receive these assets. This is a spendthrift trust, and that means she has no right that she can sell or alienate, and that makes it fundamentally different from a situation in which a beneficiary has a current vested right, that the State could, if it passed a law that allowed that, that the State could tax through a wealth tax. I'd like to just focus, if I could, on the point of the throwback tax, because I do think it is an answer to the State's concern about all of the potential loss of revenue that it may lose out on here. If and when this money is actually distributed to the beneficiary, if she is a North Carolina resident at that time, the State can get all of this income tax back by taxing the beneficiary. Well, but they're assuming she or people in that position are going to move before that happens. To pick up on Justice Kagan's point, that's the issue, right? The real world issue is she's not going to be around in North Carolina. I don't want to talk about particular people, but people in this position won't be around in the State because they'll go to Florida or Texas or Nevada. So States have all the tools they need to address that. There are anti-abuse doctrines in the tax laws that will look through and discount a sham change in residency. A sham change, but a lot of people can change residence, as you well know. I mean, States actually advertise on that basis. Come to our State, don't pay the income tax. Right. And, in fact, North Carolina is — That's what North Carolina is worried about. Right. North Carolina itself advertises on the basis of its low tax burden. If it's a true change in residency, Justice Kavanaugh, that is not a trust-specific issue. People move from State to State all the time, and when they do, there are tax consequences. But we don't call that a judicial tax shelter. We call that federalism. That is basically the interstate — The interesting question here, I guess we don't — and it's a — this doesn't happen. It hasn't happened that way, except maybe North Carolina. No, not even North Carolina. State A decides that its current residents will be taxed on the basis of their wealth. And it includes in wealth increased value of out-of-State property. Now, we know if it's real property, they can't do it. But what about intangible property? And it could happen, you know. States could decide we're going to impose wealth taxes. They could. And then we'll be faced with that problem. But your view is that is not this case, because this case, we don't know exactly what the beneficiary will get, when she'll get it, or perhaps even if she will get it. Do I have to summarize that correctly so I can't reach the really interesting legal question? You have that — you have that correct. It's also different from this case because, you know, and this is another key point that the State overlooks, the tax here was not on the beneficiary. The tax here was on the trustee. The State's laws on this are crystal clear. The statute at issue says, quote, the fiduciary shall pay the tax. In a section — Kagan. Well, the fiduciary shall pay the tax, but wouldn't the State say that the tax is on the trust itself? The State could say that, but that ignores the practical operation of the tax. If this tax is not paid, the State is going to come after the trustee, not the beneficiary for the consequences. If has happened here, the trustee believes that the tax is unlawful, then the trustee needs to hire a lawyer, defend against the liability, subject himself to discovery, and in general, as the brief for the Chamber of Commerce explains, subject himself to all of the same burdens that a defendant does in a civil case. It is the equivalent of receiving a summons in a civil action. Does it matter to the trustee and administration of the trust where the money is going to go? The trustee has a duty of loyalty to act in the best interests of the trust beneficiaries. No, but I mean, let's say one of the children is in North Carolina, the other is in Pennsylvania. Are they in any way treated differently by the trustee, given their state of residence? No. No. The trustee does not care where the beneficiaries live. He has no control over where they live. And that's another reason why the forum here, North Carolina, really just is not relevant to the operation of the trust, the trustee's duties, or the way in which he administers it. Again, the beneficiaries here could have moved to a whole range of different States and nothing about the operation of this trust or the relationship among the parties would change. Kagan. Could you just say a few words as to what the theoretical justification is for why New York and Connecticut can tax the growth of these assets? This Court supplied the theoretical basis for that in the Greenow case. And the basis is that for tax purposes and for viewing who is the actual owner, control and possession equals ownership. So the State where the trustee owns the property, in this case Connecticut, protects the trustee's ownership of that property. And in addition, States, including North Carolina, provide that the courts are open to the trust in the State in which it's administered. So the trustee has access to the courts.  And that is a State interest that justifies the taxation of the trust property. You say there are two States, the one where the trustee resides and the one where the trust is administered. That's correct, Justice Ginsburg. I'd like to say. They both impose a tax, and I guess they have credit mechanisms. That would be a separate – that's a separate Commerce Clause problem, whether there are – there's allocation, whether they are internally inconsistent. I would point out that, in fact, North Carolina says it provides allocation. It provides a credit only for source income in a different State. So, in fact, if another State taxes trust as a resident, North Carolina would not credit that property. What about your colleague's argument that the precedent, which you say would have to be upended here, has already been overturned in some fashion or another? Can you respond to that? Safe deposit, brook, guaranteed trust all turn on the same principle of actual possession and control and look at the reality of the relationships among the trust participants. They are every bit as valid today as they were then. The argument in those cases was we can tax the beneficiary as if she owned the property because she really did. And the court said, using the same principles of trust law that apply today, she really – the beneficiary really isn't the owner of the property there, so we're not going to allow taxation of that. Before I sit down, I would like to respond very briefly to the State's argument about wayfair. Wayfair is irrelevant to this case except in one important respect. An accurate analogy to the facts of wayfair shows why the tax here is unconstitutional. In wayfair, the State pointed to the taxpayer's own forum-directed contact and said that was sufficient. In this case, what the State is doing is pointing not to the taxpayer's own conduct, but to the conduct of some other person. And so if North Carolina were right in its position today, it would mean that any one of the C corporations in wayfair could have been taxed anywhere that a beneficial shareholder lived based solely on the fact of their residence. And that is not the rule that this Court has applied. This case presents a straightforward and textbook application of the settled rule that the unilateral activity of a third party does not create jurisdiction. This Court has resolved the question presented twice, both in safe deposit and in the canonical case of Hanson v. Denkel, Justice Sotomayor, as you pointed out. And there is no reason to reconsider those cases here. The Court should affirm them. Roberts. Thank you, counsel. Five minutes, Mr. Soczek. Thank you, Your Honor. Just to begin with first principles, this is a due process challenge to a State tax on the proposition that beneficiary contacts, beneficiary residency, categorically doesn't count. Now, many members of the Court have raised questions about the amount that can be taxed. That's fundamentally a point under the second element of Quill. And as this Court said in Mead v. Waco, as long as there are minimum connections to the State, whether the amount that can be taxed is a separate inquiry. All that really the Court might have occasion to do here is to reject the proposition of the State supreme court that beneficiary contacts don't count. After all, this is the first trust tax case since 1947. It might be well to leave to the State courts to sort out complexities under the second element of Quill. What do you do with Mr. O'Neill's canonical case of Hanson v. Denkler? Two major points I'd make about Hanson, Your Honor. First of all, Hanson is a situation where the burdens fell on an out-of-State party, namely Wilmington Trust, the out-of-State Delaware trustee. Here the kind of burden was on the trustee. That was a fight between three sisters for the ownership of the settler's assets. It was, Your Honor. But the point that ended up driving the Rule 19 analysis in that case was effectively or it was exactly an adjudicative jurisdiction challenge. I thought that was just because Florida decided to make the Delaware trustee an indispensable party. That's correct. And what drove the indispensability analysis and what my friend cites is the internal part of the decision where adjudicative jurisdiction of the trustee is rejected. And here the burden of taxation falls not on an out-of-State party. The economic burden falls on an in-State party. 100 percent of it, the North Carolina Kessners. Under Stone, they are the parties who ultimately feel the pinch of taxation, and that's a fundamental distinction of Hanson. In addition, I'd point out that on pages 247 and 252, the Court in Hanson twice distinguished between adjudicative jurisdiction and other forms of jurisdiction. Choice of law and also distinguishing the taxing cases. So Hanson is distinguishable both in terms of this fundamental reality of who is burdened and also concerning what the burden is. Well, we've never suggested, though, that tax jurisdiction exceeds adjudicative jurisdiction, have we? It's usually the other way around. So the Court, I don't think, has made a directional statement one way or the other. The nature of the case where we've said that tax jurisdiction is broader than adjudicative jurisdiction. I'm not. On the other hand, nor have I seen a case where the Court has said the opposite thing. But in Hanson, the Court makes a bit of a distinguishing statement about tax jurisdiction. What I'd say, Justice Gorsuch, to your question is the whole paradigm is different in tax jurisdiction cases. The focus is on benefits and protections. To conclude, I might say this. We're asking, picking up on my colleague's federalism theme, that North Carolina's choice of taxing criteria be respected. We're not casting any doubt on any other State's taxing criteria. Fundamentally, this is a due process challenge. And I would drive home again that the point that my colleague is promoting in terms of a rule under the Due Process Clause would invalidate the trust tax criteria in 33 States. That would be an aggressive deployment of the Due Process Clause. Indeed, we ask instead this Court to take the approach called for by federalism and fundamental fairness, truthfully, and to reverse the judgment below. Thank you.  Thank you, counsel. The case is submitted.